WR-73,484-02
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/29/2014 9:36:13 AM
Accepted 12/29/2014 10:03:57 AM
ABEL ACOSTA
CLERK

**IN THE**
**COURT OF CRIMINAL APPEALS**
**FOR THE STATE OF TEXAS**
**AUSTIN, TEXAS**

| | | |
|---|---|---|
| **EX PARTE** | § | |
| | § | |
| | § | **NO. WR-73,484-02** |
| | § | |
| **NEAL HAMPTON ROBBINS** | § | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**RESPONSE OF AMICUS CURIAE,**
**THE INNOCENCE PROJECT OF TEXAS,**
**IN OPPOSITION TO**
**STATE'S MOTION FOR REHEARING**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:**

**NOW COMES** Amicus Curiae, the Innocence Project of Texas, and submits this response to the State's Motion for Rehearing.

**I.**

**What Is The Purpose of a Rehearing Motion**

The State's rehearing motion suggests that the Court should treat the briefing, oral argument, consideration by the Court, drafting of opinions and issuance of a judgment as dress rehearsals for the real event, which, according to the State, is the motion for rehearing. The State's motion for rehearing, and its invitation to the Court to disregard everything that

has preceded it, challenges the concept of an orderly consideration of appellate court cases. Rather, the State suggests that simply requesting a "do-over" is a sufficient reason for granting a rehearing motion.

The *Robbins* case is one of the most thoroughly litigated cases to ever be considered by the Court of Criminal Appeals. The nine judges on this court have twice ruled on this case on Applications for Writ of Habeas Corpus. The parties have thoroughly briefed and argued this case and the judges of the Court have all expended considerable time and effort at analyzing the arguments and issuing written opinions. Everything to be said on this case has been said. At some point, a case is over and decided. That point has been reached on the *Robbins* case.

Footnote 2 of the State's rehearing motion discusses the concept of "finality of judgments." However, the State's rehearing motion fails to acknowledge the idea of finality of appellate opinions. Finality of judgments is a meritorious concept when a defendant has had his bite at the apple, has nothing new to present and must accept the judgment of the courts. Finality of an appellate opinions is the same. When the parties have had their opportunity to fully brief and argue their position, and the appellate court has thoroughly considered the case and issued written decisions, there should be a point of finality. A motion for rehearing should be considered only when there are extraordinary circumstances. Unhappiness by a party because a majority of the court rejected their argument is not the type of extraordinary circumstances meant

to be addressed with a rehearing.

It is clear that the state would like to have the Court reconsider this case with three new judges taking the place of three of the judges in the majority. The question is whether that is a proper use of a motion for rehearing.

The Court speaks as a unit. The Court has ruled in favor of Robbins and this ruling should have some meaning. The Court's decision should be respected by all concerned and not lightly disregarded. It is respectfully suggested that the proper approach to this rehearing motion should be to ask, not whether the newly constituted court would resolve it in the same way, rather, whether the case was fully and fairly considered by the court prior to the issuance of its opinion and judgment.

## II.

## State's Arguments Lack Merit

The substance of the state's rehearing motion is easily disposed of. Essentially, the state has taken the arguments that they have already made and repackaged them as a motion for rehearing. These arguments have already been rejected by the court, and this fact alone is sufficient to reject the rehearing motion.

The state's rehearing motion claims that the court made no holding in its opinion that the relevant scientific evidence was unavailable at the time of trial because it was "not ascertainable through the exercise of reasonable diligence" by applicant. In order to make this argument, the state must feign a misunderstanding of

the court's basic holding. The court clearly and unequivocally held the very thing that the state claims they did not hold, that is, that Dr. Moore's new scientific understanding was not ascertainable by applicant at the time of trial since she did not reach her new understanding until recently. In other words, applicant could not ascertain something at the time of trial that did not exist.

A further point made in the state's motion, that the word "ascertainable" demonstrates legislative intent contrary to the ruling made by the court, is simply rehash of the argument that has already been rejected by the court's opinion. The same is true of the state's argument concerning the meaning of "relevant scientific evidence." Moreover, the claim that the court's interpretation of "relevant scientific evidence" will lead to many unnecessary applications for habeas relief is wildly off base. Robbins is a unique case where an expert witness, through further scientific education, research and knowledge, learned that her previous opinion was scientifically invalid. This situation is extremely rare, and the suggestion that many similar writ applications will follow as a result of this ruling is simply not correct.

Lastly, the state contends that the court did not address the state's argument regarding the manner in which habeas courts should weigh the newly available scientific evidence against the inculpatory evidence adduced in the original trial. To the contrary, the court directly decided how to weigh the evidence and engaged in that weighing process here. The court's opinion correctly found that Dr. Moore's

testimony was the only evidence that the jury heard that supported the idea that the child's death was a homicide and, without that evidence, a jury would certainly not find applicant guilty. The court's holding does not bar the state from retrying applicant, and presenting other evidence to attempt to prove a homicide. However, the court's holding is abundantly clear that the trial evidence, minus Dr. Moore's discredited testimony, does not establish a homicide.

## III.

## Texas Leads The Way

The majority opinion correctly found that the Legislature intended Art. 11.073 to cover the situation in the Robbins case. That the Legislature chose to address the gap in the law exposed by the first Robbins' opinion is not surprising.[1] The first Robbins opinion exposed a gap in the law that needed to be fixed. By enacting Art. 11.073, the Legislature chose to clarify Texas law in order to cover the Robbins facts and to erase this black mark from Texas' reputation for leading the country in the area of correcting wrongful convictions based on invalid evidence.

The public policy interests of the state have been expressed repeatedly by the Texas Legislature, just as was done in enacting 11.073. For instance, the Legislature,

_____

[1] Unreliable or improper forensic science has appeared in more than 50% of DNA exonerations. *See* The Innocence Project, Understand the Causes: Unreliable-Limited Science (http://www.innocenceproduct.org/understand/Unreliable-Limited-Science.php. The Tim Cole Advisory Commission on Wrongful Convictions recognized this by recommending that Chapter 11 of the Code of Criminal Procedure be amended to address changing scientific evidence.

with the support and signature of Governors Bush and Perry, has passed numerous laws designed to address the problem of wrongful convictions. These include Chapter 64 of the Code of Criminal Procedure concerning DNA testing, the amended Art. 39.14 (The Michael Morton Act) concerning discovery in criminal cases, Art. 38.43 of the Code of Criminal Procedure concerning retention of biological evidence, Art. 38.01 concerning the establishment of the Texas Forensic Science Commission, Art. 38.20 concerning photographic and live lineup procedures and Art. 38.141 requiring corroboration of the testimony of an undercover informant. Art. 11.073 is another piece of legislation expressing the pro-active approach taken by the State of Texas to these issues. Additionally, the Texas Legislature created the Tim Cole Advisory Commission on Wrongful Convictions to review the causes of wrongful convictions and recommend legislative solutions.

The Court has also addressed these issues in opinions in cases such as *Tillman v. State*, 354 S.W.3d 425 (Tex. Crim. App. 2011) (eyewitness identification); *Winfrey v. State*, 323 S.W.3d 875 (Tex. Crim. App. 2010) (dog sniff lineups); and *Ex parte Henderson*, 384 S.W.3d 833 (Tex. Crim. App. 2012) (child head injuries).

The Court's original opinion denying Robbins habeas relief was an outlier from this forward march by the Texas courts and Legislature. The Legislature was faced with a choice of addressing this gap in the law or allowing this opinion to stand in contrast to the clear trend of Texas law. The Legislature chose to rectify the

unfairness of the first Robbins writ opinion, and the potential effect of the Court's opinion on other cases. Thus, Art. 11.073 became part of the jurisprudence of the State.

The enactment of Art. 11.073 has garnered national attention and praise for Texas. On February 28, 2014, in the Atlantic Magazine, a story was published entitled, "In Texas, A New Law Lets Defendants Fight Bad Science." This story describes Art. 11.073 as, "[A] ground breaking new Texas law, the only one of its kind in the nation, which recognizes that science can get it wrong."[2] The article quotes Mike Snedeker, President of the non-profit National Center for Reason and Justice, describing the new law "as elegant and straightforward and "phenomenally important, not the least because it clarifies and builds on existing due process rights." Referring to the law, Snedeker described Texas as a "beacon of legal process." In fact, Texas is a beacon of legal process and Art. 11.073 is just one of the many ways that this is true.

The Robbins decision was a significant step towards solidifying the state's reputation as leading the country at dealing with junk science and invalid convictions. The Innocence Project of Texas urges the court to not back off from their opinion granting Robbins a new trial. The reputation of both the court and the state as a whole will take a significant hit if this is done.

---

[2]www.theatlantic.com/magazine. (Feb. 28, 2014)

## CONCLUSION

For the reasons stated herein, the Innocence Project of Texas urges the Court to deny the state's motion for rehearing.

Respectfully submitted,


/s/ *Gary A. Udashen*
GARY A. UDASHEN
Bar Card Number 20369590

SORRELS, UDASHEN & ANTON
2311 Cedar Springs Road, Suite 250
Dallas, Texas 75201
(214) 468-8100
(214) 468-8104 Fax

BOARD PRESIDENT
INNOCENCE PROJECT OF TEXAS

Attorney for Amicus Curiae
The Innocence Project of Texas


## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and correct copy of the foregoing Response of Amicus Curiae by the Innocence Project of Texas to State's Motion for Rehearing was mailed to the Montgomery County District Attorney's Office, 301 North Thompson, Conroe, Texas 77301, and Brian Wice, Attorney for Applicant Neal Hampton Robbins, The Lyric Centre, 440 Louisiana, Suite 900, Houston, Texas 77002-1635, on this the 29th day of December, 2014.


/s/ *Gary A. Udashen*
GARY A. UDASHEN